UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

O'DELL WILLIS,

                         Plaintiff,

v.                                                    5:04-CV-0828
                                                    (GTS/GJD)
ONONDAGA COUNTY; and
KEVIN WALSH, Onondaga County Sheriff,

                         Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

OFFICE OF K. FELICIA DAVIS              K. FELICIA DAVIS, ESQ.
  Counsel for Plaintiff
P.O. Box 591
Syracuse, NY 13201-3049

HON. GORDON J. CUFFY                     JOHN W. SHARON, ESQ.
Onondaga County Attorney                  Deputy County Attorney
  Counsel for Defendants
John H. Mulroy Civic Center, 10th Floor
421 Montgomery Street
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

       Currently before the Court in this employment civil rights action are Defendants' six (6) motions *in limine* (Dkts 47 and 48) and Plaintiff's motion *in limine* (Dkt 49). For the reasons set forth below, Defendants' motions are granted in part and denied in part, and Plaintiff's motion is granted.

I. **DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE AND/OR TESTIMONY OF FORMER PLAINTIFFS IN THIS ACTION REGARDING CLAIMS OF A HOSTILE WORK ENVIRONMENT**

In order to make out his hostile work environment claim, Plaintiff is required to establish by a preponderance of the evidence, among other things, that his work environment was objectively hostile.  As the Court stated in its Decision and Order of September 29, 2009, "evidence of harassment of other members of the protected group, if part of a pervasive or continuing pattern of conduct, is surely relevant to show the existence of a hostile work environment." *Little v. Nat'l Broad. Co., Inc.*, 210 F. Supp.2d 330, 389 (S.D.N.Y. 2002) (citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 [2d Cir. 1997]).  "Moreover, remarks or behavior directed at individuals who are not members of the plaintiff's protected class may be considered when considering the pervasiveness and severity of workplace harassment." *Little*, 210 F. Supp.2d at 389 (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 [2d Cir. 2000] ["Remarks targeting members of other minorities . . . may contribute to the overall hostility of the working environment for a minority employee."]).

In addition, the Court finds that the probative value of testimony of other members of a protected class regarding the work environment at the Onondaga County Sheriff's Department during the time period that is relevant to the instant action (i.e. October 29, 1997 and August 5, 2004) is not substantially outweighed by the potential for unfair prejudice.  As a result, Defendants' request to preclude Plaintiff from offering testimony and/or evidence of former Plaintiffs in this action regarding claims of race and gender-based hostility in the work environment is denied.  For purposes of clarity, the Court will only add two points.  First, it will not allow the former Plaintiffs (or any other witnesses) to testify at trial regarding any incidents

that occurred either before October 29, 1997, or after August 5, 2004, because Plaintiff's claim is limited, based on the previous action that was dismissed, to whether the work environment was "objectively hostile" during this time period. As a result, and as indicated by the undersigned during the final pretrial conference held February 12, 2010, Plaintiff must provide the Court with an offer of proof regarding the testimony that will be provided by each of these former Plaintiffs before the Court will permit any of these former Plaintiffs to testify at trial.

Second, Plaintiff's discrimination claim may not be based solely on conduct directed at a protected class of employees to which Plaintiff did not belong. *See Little*, 210 F. Supp.2d at 389 (collecting cases).

## II. DEFENDANTS' MOTION TO PRECLUDE ADMISSION OF EEOC/NYSDHR RECORDS, REPORTS AND CORRESPONDENCE

Generally speaking, "EEOC determinations are sufficiently reliable to be admissible under the public records hearsay exception of Fed. R. Evid. 803(8)(C)." *Watson v. E.S. Sutton, Inc.*, 02-CV-2739, 2005 WL 2170659, at *21 (S.D.N.Y. Sept.6, 2005); *see also Chamblee v. Harris & Harris, Inc.*, 154 F. Supp.2d 670, 677-78 (S.D.N.Y. 2001) (probable cause finding admissible, and would be accompanied by limiting jury instruction that finding was not final determination of liability). "Such documents are properly excluded, however, where the evidence's probative value is substantially outweighed by the danger of unfair prejudice." *Dodson v. CBS Broadcasting Inc.*, 423 F. Supp.2d 331, 334 (S.D.N.Y. 2006) (citing Fed. R. Evid. 403; *Paolitto v. John Brown E & C, Inc., et al.*, 151 F.3d 60, 65 [2d Cir. 1998]). "The risk of prejudice is greater where the EEOC has found a violation, as opposed to merely finding the existence of probable cause regarding a violation." *Dodson*, 423 F. Supp.2d at 334 (citing *Paolitto*, 151 F.3d at 65 n.3 ["A finding of probable cause states only that the case is a close one,

3

whereas a finding . . . [of a violation] conclusively resolves the administrative charge."]); *see also Gilchrist v. Jim Slemons Imports, Inc*., 803 F.2d 1488, 1500 (9th Cir. 1986) ("In a letter of violation the EEOC concludes that a violation of [Title VII] has occurred, whereas in a probable cause determination the EEOC determines only that there is probable cause to conclude that a violation of Title VII has occurred.  A finding of probable cause does not suggest to the jury that the EEOC has already determined that there has been a violation . . . . A letter of violation, however, represents a determination by the EEOC that a violation of the Act has occurred and thus results in a much greater possibility of unfair prejudice.").

The document presently in question is a determination letter from the EEOC.  Because the Court has not had an opportunity to review this document, the Court is unable to decide its admissibility (or the admissibility of related correspondence).  As a result, the Court reserves on Defendants' motion to preclude the admission of EEOC materials.

### III.  DEFENDANTS' MOTION TO PRECLUDE TESTIMONY OF PLAINTIFF ON ALLEGATIONS OF GENDER AND RACE DISCRIMINATION

Defendants seek to preclude Plaintiff from introducing evidence of gender-based discrimination based on Plaintiff's alleged failure to allege or introduce any evidence that he was subject to discrimination on the basis of his gender.  For the reasons stated in Plaintiff's memorandum of law in opposition to this motion, Defendants request is denied.  (*See* Dkt. No. 53, Attach. 5.)

Defendants also seek to preclude Plaintiff from introducing certain evidence of race-based discrimination.  More specifically, Defendants seek to preclude Plaintiff from introducing evidence (1) that Plaintiff heard that Captain Albanese had a list, (2) relating to the SERT Team Training video, and (3) that Nurse Finch was involved in a race-based exchange with Plaintiff.

With regard to the list, the Court agrees with Defendants that testimony about what Plaintiff "heard" from a third party is hearsay. As a result, Plaintiff is precluded from testifying about what he "heard" regarding a list. However, Plaintiff is not precluded from introducing evidence of the existence of the list, to the extent that Plaintiff is able to produce such evidence through an admissible means.

With regard to the training video, as stated in the Court's Decision and Order of September 29, 2009, evidence related to incidents arising from this video is probative of a hostile work environment. However, because the Court has not had an opportunity to review the video, and/or make a determination, among other things, as to (1) who created the video, (2) how many times the Onondaga County Sheriff's Department showed the video throughout its existence, and (3) whom the Onondaga County Sheriff's Department showed the video to, the Court is unable to determine whether the probative value of the video is substantially outweighed by the potential for prejudice. As a result, the Court reserves on Defendants' motion to preclude the introduction of the training video until the Court has had an opportunity to view the video and obtain information that would enable it to balance the probative value of the video with its potential for prejudice.[1]

Finally, with regard to the Nurse Finch incident(s), given that Nurse Finch (1) was at no time employed by the Onondaga County Sheriff's Department, and (2) was not employed by the Health Department during the relevant time period of the instant action (i.e. October 29, 1997

---

[1] On February 16, 2010, Defendants filed an additional motion *in limine*, requesting that the Court preclude Plaintiff from introducing evidence of, or making reference to, the training video. (Dkt. No. 55, Attach. 1.) However, because one of Defendants' previous motions already sought to preclude the training video, the Court need not (and will not) separately address Defendants' February 16, 2010 motion *in limine*.

through August 5, 2004), the probative value of her statements is extremely low, and, on balance, given the inflammatory nature of these statements, the Court finds that the probative value of these statements is substantially outweighed by the potential for prejudice. Accordingly, Defendants' motion is granted with regard to testimony pertaining to Nurse Finch.

## IV.   DEFENDANTS' MOTION TO PRECLUDE EXPERT TESTIMONY

"Rule 26(a)(2)(B) does not require a treating physician to provide a report as a predicate to testifying for his patient." *Monroe-Trice v. Unum Employee Short-Term Disability Plan*, 00-CV-6238, 2003 WL 68033, at *1 (S.D.N.Y. Jan. 8, 2003) (citing Fed. R. Civ. P. 26[a][2][B], Advisory Committee Notes [1993 Amendments] at 154 [McKinney's 2002] ["A treating physician . . . can be deposed or called to testify at trial without any requirement for a written report."]). "This follows from the fact that the report requirement is applicable 'only to those experts who are retained or specially employed to provide [expert] testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony.'" *Monroe-Trice*, 2003 WL 68033, at *1 (citing Fed. R. Civ. P. 26[a][2][B], Advisory Committee Notes [1993 Amendments] at 154 [McKinney's 2002]).

As in *Monroe-Trice*, Defendants seek to use the report requirement as a basis for precluding all testimony by Plaintiff's treating physician.[2] "Defendants refer to Fed. R. Evid.

---

[2]   Defendants also seek to preclude Plaintiff's treating physician from testifying because Plaintiff failed to respond to Defendants' request(s) during discovery for (1) a release of Plaintiff's medical records, and (2) the identity of each professional or practitioner from whom Plaintiff has received treatment based on the injuries alleged in his complaint. However, the Court denies Defendants' request based on Plaintiff's failure to timely comply with its discovery demands, because (1) Plaintiff was proceeding *pro se* when these materials were requested, (2) Plaintiff identified the name of his medical provider during his deposition on May 24, 2007, and (3) Plaintiff's attorney has agreed to release Plaintiff's medical records before trial.

702, which addresses the testimony of experts concerning scientific, technical or other specialized matters." *Id*. "This argument fails, however, because the Advisory Notes to Rule 26 explicitly reject the notion that anyone whose testimony falls within the scope of Rule 702 must provide a report." *Id*.; *see also Lamere v. New York State Office For The Aging*, 223 F.R.D. 85, 89 (N.D.N.Y. 2004) (Treece, M.J.) ("[A]lthough she discusses the care and treatment of her patient and offers opinion testimony as permitted by Rule 702, treating doctors are deemed to be neither retained nor specially employed experts, unless they were specifically retained for such litigation purposes.  However should the doctor's testimony extend beyond those facts and opinions characteristically related to the care and treatment of the patient, the doctor may be required to provide a written report as mandated by Rule 26(a)(2)(B). Thus, under this analysis, a treating physician is an expert witness who can provide opinion testimony consistent with Rule 702, must be identified for the purpose of being subjected to further disclosure, such as a deposition or interrogatories, but does not have to provide a written report before being deposed or testifying at trial.").

     Having said that, "a treating physician, who has not complied with the reporting requirement of Rule 26(a)(2)(B), should not be permitted to render opinions outside the course of treatment and beyond the reasonable reading of the medical records." *Lamere*, 223 F.R.D. at 89 (citing *McEachron v. Glans*, 98-CV-0017, 1999 WL 33597331, at *4 [Homer, M.J.] [finding that the doctor cannot testify as to information gained outside the scope of treatment]). However, "most, if not all, courts that have considered this issue recognize that a treating physician often forms opinions and makes determinations during the various stages of the course of treatment." *Id*. at 89-90 (citing *Santoro v. Signature Const., Inc*., 00-CV-4595, 2002 WL

7

31059292, at *4 [S.D.N.Y. Sept. 16, 2002]).  "With this in mind, these courts have permitted a treating physician to testify to a host of opinions and determinations." *Id*. at 90 (collecting cases).

Here, Plaintiff's treating physician, Dr. Becker, has not been specifically retained for litigation purposes.  In addition, Plaintiff has identified his treating physician by name, and has offered to disclose all medical records produced by Dr. Becker.  As a result, the Court will permit Dr. Becker to testify at trial.  However, because Dr. Becker is a treating physician who is an internist and has not provided a written expert report, Dr. Becker will not be qualified as an expert, particularly in the field of psychology or psychiatry.  Instead, Dr. Becker's testimony will be limited to facts and opinions characteristically related to the care and treatment of a patient, which includes opinion testimony about Plaintiff's condition and emotional injuries.  *See Reilly v. Revlon, Inc.*, 08-CV-0205, 2009 WL 2900252, at * 3 (S.D.N.Y. Sept. 9, 2009) ("[T]reating physicians, like all other fact witnesses, may give opinion testimony about plaintiff's condition and emotional damages pursuant to Fed. R. Ev. 702."); *Fanning v. Target Corp*., 05-CV-0012, 2006 WL 298811, at *2 (S.D.N.Y. Feb. 6, 2006) (permitting treating physicians to testify about "their observations and opinions derived from their examination and treatment of [plaintiff]"); *Monroe-Trice*,  2003 WL 68033, at *2 (permitting treating physician "to testify about his evaluation and treatment of plaintiff, and . . . express his opinions about the plaintiff's condition and prognosis based upon his observations while treating plaintiff."); *Byrne v. Gracious Living Industries, Inc*., 01-CV-10153, 2003 WL 446474, *2 (S.D.N.Y. Feb. 25, 2003) ("[M]ost courts have held that, so long as the physician's opinion was acquired directly through treatment of the patient, it is not expert testimony for purposes of Rule 26(a)(2)(B). Thus, to the extent that a

treating physician testifies only to the care and treatment of the patient, the physician is not considered to be a 'specially employed' expert and is not subject to the written report requirements of Rule 26(a)(2)(B), notwithstanding that the witness may offer opinion testimony under the Federal Rules of Evidence. Moreover, so long as this criterion is met, there is no limitation on the scope of the opinion rendered. That is, opinions as to causation have been held permissible."); *Brundidge v. City of Buffalo*, 79 F. Supp.2d 219, 225 (W.D.N.Y. 1999) (permitting Plaintiff's treating physician to testify about "her opinion as to what caused plaintiff's mental problems as long as her opinion is based solely on her treatment of the plaintiff"); *McEachron*, 1999 WL 33597331, at *4 (treating physician can testify or be deposed on life expectancy and pain and suffering, if reflected in the medical records).

## V.   DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE ON THE ISSUE OF EMOTIONAL DAMAGES

Defendants argue that "Plaintiff has abandoned any claims for emotional distress and mental anguish as prayed for in the prayer for relief in Plaintiff's First Amended Complaint" because "Plaintiff has failed to produce any medical records or other proof[, and] . . . has failed to disclose an expert to opine on the issue." (Dkt. No. 47, Attach. 4.)

As an initial matter, expert testimony is not required for a plaintiff to make out a claim for emotional distress. *See Kolb v. Camilleri*, 02-CV-0117, 2008 WL 5143246, at *3 (W.D.N.Y. Dec. 8, 2008) ("Plaintiff's will not be precluded from seeking damages for emotional distress and physical injury merely because evidence of such damages will come from plaintiff himself."); *Kinneary v. City of N.Y.*, 536 F. Supp.2d 326, 330-32 (S.D.N.Y. 2008) (plaintiff's testimony of embarrassment and disappointment without medical evidence of physical manifestations or medical or psychological treatment warranted garden variety non-economic damages award);

9

*Rainone v. Potter*, 388 F. Supp.2d 120 (E.D.N.Y. 2005) (describing and collecting cases of garden variety awards of $5,000 to $35,00 for emotional distress typically rendered in cases where the evidence of harm was presented primarily through the testimony of the plaintiff, who describes his distress in vague or conclusory terms).  Moreover, because (1) there is record evidence that Plaintiff suffered emotional distress, and (2) throughout the discovery period, Plaintiff was proceeding *pro se*, the Court will not preclude Plaintiff from introducing evidence of emotional damages.

**VI.    DEFENDANTS' MOTION TO PRECLUDE REFERENCE TO U.S. DEPARTMENT OF JUSTICE FILES, RECORDS & REPORTS**

Defendants argue that Plaintiff should be precluded from introducing evidence related to the investigation of the Onondaga County Sheriff's Department conducted by the United States Department of Justice between 1993 and 1997 because "the probative value of the evidence is non-existent," and the potential for prejudice, as well as the likelihood that the jury will be confused, is high.

At a pretrial conference before the undesigned on February 12, 2010, Plaintiff's counsel stated on the record that she would not seek to introduce any evidence related to the investigation conducted by the Department of Justice.  As a result, the Court denies this request as moot.

**VII.   PLAINTIFF'S MOTION FOR THE COURT TO PERMIT HIM TO INTRODUCE EVIDENCE OF CONDUCT THAT FALLS WITHIN THE RELEVANT TIME PERIOD**

During his deposition, Plaintiff testified about several "incidents of conduct by white co-workers[,] which created the hostile work environment[,] which were believed to have occurred after the May 2004 date." (Dkt. No. 49, Attach. 2, at 2.)  However, Plaintiff argues that

10

"discovery documents recently received from Defendants" reveals that "the dates of those incidents fall within the October 30, 1997 and August 4, 2004 time line that this Court has previously indicated would be covered by the existing Complaint[.]" (*Id*.)  As a result, Plaintiff requests that the Court permit him to introduce evidence of the following incidents: (1) snapping/popping of Plaintiff's "belt keeper"; and (2) Sergeant Putnam asking Plaintiff if he called a fellow deputy a "cracker."  (*Id*.)

Because these two incidents are relevant to Plaintiff's hostile work environment claim, in the event that Plaintiff is able to demonstrate that these two incidents occurred between October 30, 1997 and August 4, 2004, evidence of these incidents will be admitted.[3]

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to preclude Plaintiff from offering testimony and/or evidence, of former Plaintiffs in this action regarding claims of race and gender-based hostility in the work environment is **DENIED**; and it is further

**ORDERED** that the Court **RESERVES** on Defendants' motion to preclude Plaintiff from introducing EEOC/NYSDHR records, reports and correspondence; and it is further

**ORDERED** that Defendants' motion to preclude Plaintiff from testifying about allegations of gender and race discrimination is **GRANTED in part**, **DENIED in part**, and **RESERVED ON in part**, as set forth in Part III of this Decision and Order; and it is further

---

[3]  The Court would only note that, to the extent that Plaintiff intends to demonstrate that these two incidents occurred between October 30, 1997 and August 4, 2004 through his own testimony, given the statements that he made during his May 24, 2007 deposition, Plaintiff will be proceeding at his own peril.

**ORDERED** that Defendants' motion to preclude Plaintiff's treating physician, Dr. Becker, from testifying at trial about her observations and opinions regarding Plaintiff's condition is **GRANTED in part** and **DENIED in part**, in that Dr. Becker is precluded from testifying as an expert, but he may offer testimony regarding his care and treatment of Plaintiff, and any mental and/or emotional injuries, provided that those opinions were formed during his treatment of Plaintiff; and it is further

**ORDERED** that Defendants' motion to preclude Plaintiff from introducing evidence on the issue of emotional damages is **DENIED**; and it is further

**ORDERED** that Defendants' motion to preclude Plaintiff from introducing evidence regarding the Department of Justice investigation is **DENIED** as moot; and it is further

**ORDERED** that Plaintiff's motion for the Court to permit him to introduce evidence of two incidents previously thought to have occurred outside the relevant period of the instant action is **GRANTED** on the condition that Plaintiff is able to demonstrate that these two incidents occurred between October 30, 1997 and August 4, 2004.

Dated: February 17, 2010
Syracuse, NY

Hon. Glenn T. Suddaby
U.S. District Judge